[10,042.]

# THE PEOPLE v. RUSSELL.

IMPANELING JURY IN CRIMINAL CASE.—In criminal cases, twelve jurors must be called, and the defendant may examine the whole twelve, and must then exercise his right of peremptory challenge on those not excused for cause, and those not challenged must be sworn to try the issue. Enough jurors must then be called to fill up the number to twelve, and the same process must be repeated as to the new jurors called, until the jury is complete.

IDEM.—A peremptory challenge cannot be allowed after a juror is sworn to try the issue, except for cause shown.

CROSS EXAMINATION OF WITNESS.—A defendant who becomes a witness in his own behalf, and undertakes, on his direct examination, to state all that transpired between two points of time, may be asked, on his cross examination, if he has omitted anything pertinent to the case; and his attention may be directed to the precise point, by asking him if some specified thing did not occur.

APPEAL from the District Court, Fifteenth Judicial District, City and County of San Francisco.

The defendant was convicted of the crime of murder in the first degree, in the killing of James Crotty, on the 2d day of August, 1872, and appealed. On the direct examination of the defendant, he stated where he had been during the three hours—mentioning several places he visited. On his cross-examination, the District Attorney, after defendant had stated that he could not say where he got the pistol, asked him the following questions, and received the following answers: "Did you get a pistol at the Lick House? A.—No, sir. Q.—Did you get a pistol at Mr. Collins'? A.—No, sir. Q.—Now, sir, I will ask you if you asked for a pistol at Stratman's? A.—No, sir."

The other facts are stated in the opinion.

*G. W. Tyler*, for Appellant, argued that the case of the *People* v. *Scoggins* was a bare majority decision, and that

the reasoning in the dissenting opinion was so strong that the Court should review the decision. On the point of the cross-examination of the defendant he cited *Thornburg* v. *Hand*, 7 Cal. 561; *Jackson* v. *Feather River Water Co.*, 14 Cal. 24; *P. and F. R. R. Co.* v. *Stimpson*, 14 Peters, 461; and *Ellmaker* v. *Buckley*, 16 S. & R. 77.

*D. J. Murphy*, for the People, on the question of challenging jurors, cited *Taylor* v. *Western Pacific Railroad Company*, 45 Cal. 323.

On the point of the cross-examination of Russell, he cited 1 Greenleaf on Ev. 451*a*, 12 ed. by Redfield; *Mask et al.* v. *State*, 32 Miss. 405; *Fulton Bank* v. *Stafford*, 2 Wend. 485; and *Varich* v. *Johnson*, id. 166.

He also argued that, although a witness was not bound to criminate himself, yet it was a privilege he might waive, and that if he answered in part as to a matter that might criminate him, he might be cross-examined as to the whole transaction; and cited *Com.* v. *Home*, 13 Grey, 26; and *People* v. *Carroll*, 3 Parker Cr. C. 73.

By the COURT:

The first ground of error relied upon is, that the Court erred in requiring the defendant to exercise his right of peremptory challenge prematurely, and before twelve jurors had been procured whom the Court decided to be competent and qualified. But the action of the Court was in strict accordance with the ruling of this Court in *People* v. *Scoggins*, 37 Cal. 676, and was correct, unless that case is to be now overruled. After a careful reconsideration of the question, we adhere to the ruling in that case as to the method to be pursued in impaneling a jury in a criminal action.

On the trial the defendant testified as a witness on his own behalf; and on his examination in chief, stated that he

left the saloon where the homicide subsequently occurred, about six o'clock in the evening, and returned about nine o'clock, when the killing took place. He also detailed what he did, and how he was occupied during the interval between the time when he left and when he returned to the saloon; but no reference was made to the time or manner of procuring the pistol with which the homicide was committed. On his cross-examination he was asked where he got the pistol, and the question was objected to as not pertinent to anything brought out on the examination in chief. But the Court overruled the objection, and the witness answered: "I cannot say where I did get it." This ruling was excepted to, and is assigned as error. It further appears that in his argument to the jury, the District Attorney commented on the fact that the defendant failed to remember where he got the pistol, as a circumstance tending to impeach his credibility.

But we think there was no error in the ruling of the Court. The inquiry made in the first instance of the prisoner, as to where he got the pistol, may well be considered as limited to something occurring between the time of his departure from the saloon and his subsequent return to it. The ground upon which the objection was overruled—that the matter inquired of was part of the *res gestæ*—was in effect a determination by the Court that the inquiry was to be confined to the period of time covered by the evidence in chief. It is apparent that the Court would have so instructed the witness, had it been called upon to do so by the counsel for the defense. The subsequent and more specific questions as to how the pistol was obtained, each refer to some place which the witness had already, upon his examination in chief, represented that he visited between the time of his first struggle with the deceased in the saloon and his subsequent return to the same place. On his cross-examination it was certainly competent to inquire of the witness concern-

ing any matter which was embraced in his examination in chief. The witness, undertaking in his own behalf to state all that had transpired within two given points of time, may be properly asked on cross-examination, if he has omitted anything pertinent to the case, and his attention may be directed to the precise point of inquiry by asking him if some specified thing did not occur during the interval, as for instance, whether or not he had procured a pistol.

Judgment affirmed and cause remanded, with directions to the Court below to fix a day for the execution of the sentence ; remittitur to issue forthwith.