22-2684-cv
*In re: Kind LLC "Healthy and All Natural" Litigation*

# United States Court of Appeals
# For the Second Circuit

August Term 2023

Argued: January 10, 2024
Decided: May 2, 2024

No. 22-2684-cv

---

CHARITY BUSTAMANTE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED; AMANDA SHORT; SARAH THOMAS, ON BEHALF OF
THEMSELVES AND ALL OTHERS SIMILARLY SITUATED; and ELIZABETH
LIVINGSTON,

*Plaintiffs-Appellants*,

AMY CAVANAGH, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED; ROBERT O'BRIEN, INDIVIDUALLY, AND ON BEHALF
OF ALL OTHERS SIMILARLY SITUATED; MAYRA GALVEZ, INDIVIDUALLY
AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; CHRIS C.
GALVEZ, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY
SITUATED; BRANDON KAUFER; DENA KARNEZIS, INDIVIDUALLY AND ON
BEHALF OF ALL OTHERS SIMILARLY SITUATED; DANIELLE COOPER,
INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED;
LEE JACKSON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED; CHARLIE MCDONALD; BENJAMIN KARTER,
INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED
AND THE GENERAL PUBLIC; MELANIE HOUSE, INDIVIDUALLY AND ON
BEHALF OF ALL OTHERS SIMILARLY SITUATED; ERICH ZANDER; BONNIE
BURKETT; and BARRY A. COHEN,

*Plaintiffs*,

*v.*

KIND, LLC, A NEW YORK LIMITED LIABILITY COMPANY,

*Defendant-Appellee,*

Appeal from the United States District Court
for the Southern District of New York
No. 1:15MD02645, Naomi Reice Buchwald, *Judge.*

Before: MENASHI, LEE, AND MERRIAM, *Circuit Judges.*

KIND, LLC markets, advertises, and distributes various snack foods, including granola bars. In this multidistrict litigation, plaintiffs-appellants assert that the phrase "All Natural" that appeared on the labels of KIND products is deceptive and misleading. Plaintiffs seek damages on behalf of themselves and three classes, based on common law fraud, as well as consumer protection and false advertising laws in New York, California, and Florida. By memorandum and order dated September 9, 2022, the District Court for the Southern District of New York (Buchwald, *J.*) granted KIND's motion for summary judgment, concluding, in relevant part, that plaintiffs had failed to establish how a reasonable consumer would understand the term "All Natural." The District Court held that this was fatal to plaintiffs' claims because without showing how a reasonable consumer understood the term plaintiffs could not explain how or why they were materially deceived. In reaching this conclusion, the District Court granted KIND's motion to preclude two of plaintiffs' expert opinions from the summary judgment record, and granted KIND's motion to decertify the classes. Plaintiffs timely appealed.

For the reasons set forth below, we hold that the District Court did not abuse its discretion in precluding the opinions of plaintiffs' experts. We also hold that because plaintiffs failed to present admissible evidence of what a reasonable consumer would expect of KIND products labeled "All Natural," the District Court did not err in concluding that there was no triable issue of fact as to whether reasonable consumers would be misled by the "All Natural" labeling. Because we affirm the District Court's grant of summary judgment, plaintiffs'

arguments regarding class decertification are moot. The judgment of the District Court is therefore **AFFIRMED**.

TODD S. GARBER, Finkelstein, Blankinship, Frei-Pearson & Garber, LLP, White Plains, NY (Bradley K. King, Ahdoot & Wolfson, PC, New York, NY; Daniel L. Warshaw, Pearson Warshaw, LLP, Sherman Oaks, CA, *on the brief*) *for Plaintiffs-Appellants.*

KERI ELIZABETH BORDERS (Dale Joseph Giali, Rebecca B. Johns, *on the brief*), King & Spalding LLP, Los Angeles, CA, *for Defendant-Appellee.*

SARAH A. L. MERRIAM, *Circuit Judge*:

Plaintiffs-appellants ("plaintiffs") appeal from the September 12, 2022, judgment entered in the District Court for the Southern District of New York (Buchwald, *J.*), granting summary judgment in favor of defendant-appellee KIND, LLC ("KIND"), granting KIND's motion to disqualify two of plaintiffs' experts, and decertifying the classes.

KIND markets, advertises, and distributes various snack foods, including granola bars. Plaintiffs assert that the phrase "All Natural" that appeared on the labels of 39 KIND products is deceptive and misleading. Plaintiffs seek damages on behalf of themselves and three classes pursuant to common law and to New York, California, and Florida consumer protection and false advertising laws.

3

After the parties completed discovery, KIND moved for summary judgment, to preclude plaintiffs' experts from offering testimony in opposition to its motion for summary judgment, and to decertify the classes. By memorandum and order dated September 9, 2022, the District Court granted KIND's motion for summary judgment, concluding, in relevant part, that plaintiffs had failed to establish a reasonable consumer's understanding of the term "All Natural," which was fatal to plaintiffs' claims. See generally In re KIND LLC "Healthy and All Natural" Litig., 627 F. Supp. 3d 269 (S.D.N.Y. 2022) ("KIND II"). The District Court also granted KIND's motion to preclude two of plaintiffs' expert opinions from the summary judgment record, and KIND's motion to decertify the classes. See generally id.

Plaintiffs timely appealed. For the reasons set forth below, we hold that the District Court did not abuse its discretion in precluding the opinions of plaintiffs' experts. We also hold that because plaintiffs failed to present admissible evidence of what a reasonable consumer would expect of KIND products labeled "All Natural," the District Court did not err in concluding that there was no triable issue of fact as to whether reasonable consumers would be misled by the "All Natural" claim. Because we affirm the District Court's grant of summary

4

judgment, plaintiffs' arguments regarding class decertification are moot. The judgment of the District Court is therefore **AFFIRMED**.

## Background

This litigation began in 2015, shortly after the Food and Drug Administration ("FDA") issued a "warning letter" challenging a statement on KIND product labels that the products are "healthy and tasty."[1] Following the FDA letter, various plaintiffs filed private lawsuits asserting, inter alia, that consumers had been deceived by the description of KIND products as "healthy." These lawsuits were eventually transferred to the Southern District of New York and consolidated to a multidistrict litigation docket.

Plaintiffs' claims have shifted over the course of this litigation. In May 2016, plaintiffs voluntarily dismissed the claims challenging KIND's use of the term "healthy." Thereafter, plaintiffs filed an amended consolidated class action complaint ("ACC") alleging that plaintiffs had instead been deceived by the "All Natural/Non-GMO" claim on the packaging of various KIND products. The ACC asserts claims for breach of express warranty, unjust enrichment, and negligent misrepresentation, as well as violations of the New York General

---

[1] In 2016, the FDA withdrew the objections outlined in its 2015 warning letter.

Business Law ("GBL"), N.Y. Gen. Bus. Law §§349-50; California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §1750, et seq.; California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §17500, et seq.; California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200, et seq.; and Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §501.201, et seq.

To support these claims, the ACC alleges that the "All Natural" language on KIND products constitutes deceptive labeling under five separate definitions of "All Natural." It further alleges that the following eleven ingredients contained in some relevant KIND products are "non-natural": Soy Lecithin; Soy Protein Isolate; Citrus Pectin; Glucose Syrup/"Non GMO" Glucose; Vegetable Glycerine; Palm Kernel Oil; Canola Oil; Ascorbic Acid; Vitamin A Acetate; D-Alpha Tocopheryl Acetate/Vitamin E; and Annatto. J. App'x at 87; see also id. at 87-95.

On January 17, 2020, plaintiffs filed a motion seeking to certify three damages classes under Rule 23(b)(3) of the Federal Rules of Civil Procedure: (1) The "New York Class," which would include "[a]ll persons who purchased KIND's Products in New York for their personal use and not for resale at any

6

time since April 17, 2009"; (2) the "California Class," which would include "[a]ll persons who purchased KIND's Products in California for their personal use and not for resale at any time since April 17, 2011"; and (3) the "Florida Class," which would include "[a]ll persons who purchased KIND's Products in Florida for their personal use and not for resale at any time since April 17, 2011." J. App'x at 163.[2] On March 24, 2021, the District Court granted plaintiffs' motion to certify the three damages classes. See In re Kind LLC "Healthy and All Natural" Litig., 337 F.R.D. 581, 610 (S.D.N.Y. 2021) ("KIND I"). In relevant part, the District Court found that "common questions predominate[d]" because, inter alia,

> the differences between "Non-GMO" and "No Genetically Engineered Ingredients" on one hand, and "All Natural" on the other, are minute . . . . If a product contains a GMO, it by definition cannot be natural . . . . [N]one of the labels displayed "All Natural" on its own. Rather, KIND coupled "All Natural" with "Non-GMO."

Id. at 599-600.

Following class certification and further discovery, plaintiffs dropped any challenge to the "Non GMO" and "No Genetically Engineered Ingredients" statements on KIND products. Plaintiffs now pursue their challenge only to the

---

[2] Plaintiffs also sought certification of injunctive classes pursuant to Rule 23(b)(2). The District Court denied that aspect of plaintiffs' clarification motion and that ruling is not challenged on appeal.

"All Natural" claim that previously appeared on certain KIND products.[3]

After the close of discovery, KIND filed motions for summary judgment, to decertify the classes, and to exclude plaintiffs' expert witnesses, Dr. J. Michael Dennis and Dr. Anton Toutov. In a memorandum and order issued on September 9, 2022, the District Court granted KIND's motions. See generally KIND II, 627 F. Supp. 3d at 269. Judgment entered in favor of KIND on September 12, 2022, and this appeal followed.

## DISCUSSION

"When a party challenges the district court's evidentiary rulings underlying a grant of summary judgment, we undertake a two-step inquiry. First, we review the trial court's evidentiary rulings, which define the summary judgment record." Picard Tr. for SIPA Liquidation of Bernard L. Madoff Inv. Sec. LLC v. JABA Assocs. LP, 49 F.4th 170, 180-81 (2d Cir. 2022) (citation and quotation marks omitted). The District Court's determinations as to the admissibility of evidence are reviewed for abuse of discretion. See id. at 181. Second, after we have defined the record, we review the summary judgment

---

[3] In 2014, KIND began discontinuing the use of the "All Natural/GMO" label on a rolling basis, and by 2017, KIND had discontinued all labels bearing any form of the "All Natural" claim.

8

decision de novo. See id. Accordingly, we begin by considering whether the

District Court abused its discretion in precluding the expert opinions of Dr. J.

Michael Dennis and Dr. Anton Toutov.

## I.     Relevant Consumer Protection and False Advertising Law

To frame this analysis, we begin with an overview of the law applicable to

plaintiffs' claims. As noted, plaintiffs assert claims pursuant to various state law

consumer protection and false advertising statutes. While the required elements

of claims under each statute vary, the parties do not dispute the District Court's

conclusion that "there is substantial overlap between the elements of the claims,"

and that to prevail on any of their claims, "plaintiffs must demonstrate: (1) a

deceptive act; (2) materiality; and (3) injury." KIND II, 627 F. Supp. 3d at 280.[4]

Only the first element, deception, is at issue in this appeal.

Deception is governed by the reasonable consumer standard. See Maurizio

v. Goldsmith, 230 F.3d 518, 521-22 (2d Cir. 2000) (per curiam) (GBL); McGinity v.

Procter & Gamble Co., 69 F.4th 1093, 1097 (9th Cir. 2023) (UCL, FAL, CLRA);

---

[4] Plaintiffs also assert common-law claims for breach of express warranty, unjust enrichment, and negligent misrepresentation. Plaintiffs do not challenge the District Court's finding that because the common-law claims "are similarly premised on plaintiffs establishing a deceptive and misleading act," the common-law claims "fail if plaintiffs cannot meet the statutory standard." KIND II, 627 F. Supp. 3d at 281.

Zlotnick v. Premier Sales Grp., Inc., 480 F.3d 1281, 1284 (11th Cir. 2007) (FDUTPA). Under the reasonable consumer standard, deceptive acts are defined "objectively" as those "that are likely to mislead a reasonable consumer acting reasonably under the circumstances." Maurizio, 230 F.3d at 521 (citation and quotation marks omitted); see also Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008) ("Under the reasonable consumer standard, Appellants must show that members of the public are likely to be deceived." (citation and quotation marks omitted)); Zlotnick, 480 F.3d at 1284 ("[D]eception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." (citation and quotation marks omitted)). The Ninth Circuit has helpfully explained that this standard requires "more than a mere possibility that the label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather, the reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." McGinity, 69 F.4th at 1097 (citations and quotation marks omitted).

To establish deception under the reasonable consumer standard at the

10

summary judgment stage, plaintiffs must present admissible evidence establishing how the challenged statement – "All Natural" – tends to mislead reasonable consumers acting reasonably. See, e.g., Johnson & Johnson * Merck Consumer Pharms. Co. v. Smithkline Beecham Corp., 960 F.2d 294, 297-98 (2d Cir. 1992) (discussing deceptive advertising in the context of the Lanham Act); Bruton v. Gerber Prod. Co., 703 F. App'x 468, 471 (9th Cir. 2017) (mem.) (The evidence of record, including plaintiff's testimony and warning letters from the FDA, was insufficient "to create a genuine dispute of material fact for trial as to consumer deception" under the reasonable consumer test.).

## II. The District Court did not abuse its discretion in excluding the expert opinions of Dr. Dennis and Dr. Toutov.

### A. Applicable Law

"We review a district court's decision to admit or exclude expert testimony under a highly deferential abuse of discretion standard." In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II), 982 F.3d 113, 122 (2d Cir. 2020) (per curiam) (citation and quotation marks omitted). "A decision to . . . exclude expert . . . testimony is not an abuse of discretion unless it is manifestly erroneous." Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 265 (2d Cir. 2002) (citation and quotation marks omitted).

11

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. Under this rule, the District Court acts as a gatekeeper and "is charged with 'the task of ensuring that an expert's testimony both rests on a reliable foundation <u>and</u> is relevant to the task at hand.'" <u>Id.</u> (emphasis added) (quoting <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579, 597 (1993)).

"Throughout, a judge assessing a proffer of expert scientific testimony under Rule 702 should also be mindful of other applicable rules." <u>Daubert</u>, 509 U.S. at 595. Specifically, "the trial court should look to the standards of Rule 401 in analyzing whether proffered expert testimony is relevant," <u>Amorgianos</u>, 303 F.3d at 265. In other words, the court should consider whether the evidence has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," <u>Daubert</u>, 509 U.S. at 587 (citation and quotation marks omitted); <u>see also</u> Fed. R. Evid. 401.

If the evidence is relevant, a district court "must next determine whether the proffered testimony has a sufficiently reliable foundation to permit it to be considered." <u>Amorgianos</u>, 303 F.3d at 265 (citation and quotation marks

omitted).[5] The reviewing court must also consider Rule 403: "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." Daubert, 509 U.S. at 595 (citations and quotation marks omitted).

Daubert instructs a district court to "focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the district court's belief as to the correctness of those conclusions." Amorgianos, 303 F.3d at 266. Although surveys are generally admissible in cases that "depend on establishing that certain associations have been drawn in the public mind," Schering Corp. v. Pfizer Inc., 189 F.3d 218, 225 (2d Cir.), as amended on reh'g (2d Cir. 1999), "[t]he evidentiary value of a survey's results rests upon the underlying objectivity of the survey itself," Johnson & Johnson, 960 F.2d at 300.

The objectivity of a survey "depends upon many factors," including "whether the questions are leading or suggestive." Id. (citation and quotation

---

[5] Of course any "[i]rrelevant evidence," including irrelevant expert testimony, "is not admissible." Fed. R. Evid. 402.

marks omitted). Errors in survey methodology generally "go only to the weight of the evidence – subject, of course, to Rule 403's more general prohibition against evidence that is less probative than prejudicial or confusing." Schering Corp., 189 F.3d at 228; see also Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, [or] misleading the jury . . . .").

**B.      Dr. Dennis**

At summary judgment, plaintiffs attempted to establish how a reasonable consumer would understand the phrase "All Natural" through the expert opinion of Dr. J. Michael Dennis. Dr. Dennis conducted a "consumer perceptions" survey on plaintiffs' behalf for the purpose of this litigation. J. App'x at 1503. Based on his survey, Dr. Dennis concluded "that a reasonable consumer in [California, New York, and Florida] perceives the Products with the 'All Natural' descriptor will not contain artificial and synthetic ingredients or contain [certain] chemicals." Id. at 1532.

The District Court excluded Dr. Dennis's expert report, finding that the consumer perceptions survey on which it relied "does not assist the trier of fact

14

because it is biased, leading, and to the extent it provides any insight, cannot provide the objective standard necessary to answer the key question in this case." KIND II, 627 F. Supp. 3d at 292. Thus, because the survey "cannot assist the trier of fact," the District Court held that "the survey and Dr. Dennis's testimony regarding the survey are inadmissible." Id. Plaintiffs contend that the District Court abused its discretion in excluding Dr. Dennis's report because any criticisms of Dr. Dennis's methodology should affect only the weight of the evidence and not its admissibility. We disagree.

Plaintiffs retained Dr. Dennis to design and conduct "a consumer survey to measure the extent to which reasonable consumers' perceptions of the Products are consistent with the Plaintiffs' theory of liability, that is, the allegation that the Products' labeling and marketing were deceptive with respect to the use of the 'All Natural' claim." J. App'x at 1503. Dr. Dennis surveyed California, Florida, and New York consumers who had purchased KIND products, or products from a KIND competitor, in the last twelve months. See id. at 1505-07. After some initial screening questions, Dr. Dennis presented the consumers with "a mock-up of the front of a brand-neutral product package and instructed the [consumers] to 'examine it like you were shopping'" and "to

15

assume that the nutrition snack bar is a 'popular national brand.'" Id. at 1510.

The mock-up label displayed the words "All Natural," and in several respects

resembled the packaging of a KIND bar. See id. at 1511.

After instructing consumers to "consider only the product packaging in

answering the survey questions," the survey "administer[ed] six consumer

perception questions," only two of which are relevant to this appeal. J. App'x at

1512. The first question asked: "Because of this descriptor [All Natural], what is

your expectation for this product?" Id. at 1512, 1515. The survey then directed

the consumer to select one of the following responses: (a) "Will NOT contain

artificial and synthetic ingredients;" (b) "Will contain artificial and synthetic

ingredients;" or (c) "Not sure/No expectation." Id. at 1515. In response to this

question, "86.4% of consumers expected the Product with the 'All Natural' claim

'will NOT contain artificial and synthetic ingredients.'" Id. at 1530. The survey

did not define the terms "artificial" or "synthetic."

The District Court found that this first question was "insufficient to

determine in any meaningful sense how reasonable consumers understand the

'All Natural' claim, or to test plaintiffs' theory." KIND II, 627 F. Supp. 3d at 288.

In so finding, the District Court properly focused on Dr. Dennis's survey

16

methodology, finding this first question "biased" and "lead[ing]" because it "improperly directs survey participants to the 'correct' answer" and "is plainly designed to validate plaintiffs' theory" of liability. Id. at 287, 288.

There is nothing manifestly erroneous about that characterization, particularly given Dr. Dennis's concession both in his report and at his deposition that he "worded [his] substantive response options on the basis of [his] understanding of the Plaintiffs' theory of liability." J. App'x at 1515; see also KIND II, 627 F. Supp. 3d at 288. Indeed, we have previously held that a plaintiff could not rely on a survey based on a question that, like this one, "was an obvious leading question in that it suggested its own answer." Universal City Studios, Inc. v. Nintendo Co., 746 F.2d 112, 118 (2d Cir. 1984);[6] see also Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer Pharms., Inc., 19 F.3d 125, 134 (3d Cir. 1994) ("A survey is not credible if it relies on leading questions which are inherently suggestive . . . ." (citation and quotation marks omitted)); Scotts Co. v. United Indus. Corp., 315 F.3d 264, 277 (4th Cir. 2002)

---

[6] That Dr. Dennis chose "to display the 'All Natural' claim in isolation, rather than as part of the 'All Natural/Non GMO' statement, as it always appeared on KIND labels" also supports the District Court's decision to exclude his report because that design choice further "undercuts the relevance of Dr. Dennis's results." KIND II, 627 F. Supp. 3d at 288.

17

(Focus group discussions lacked reliability where the "moderators of the groups channeled the discussions and led the participants into giving responses favorable to" the plaintiff.).

The second question in Dr. Dennis's survey again asked: "Because of this descriptor [All Natural], what is your expectation for this product?" J. App'x at 1516. But in response to that question, the survey directed the consumer to select one of the following responses: (a) "Is <u>NOT</u> made using these chemicals: Phosphoric Acid, Hexane, Potassium Hydroxide, Ascorbic Acid"; (b) "Is made using these chemicals: Phosphoric Acid, Hexane, Potassium Hydroxide, Ascorbic Acid"; or (c) "Not sure/No expectation." J. App'x at 1516. In response to this question, "76.2% of consumers expected the Product with the 'All Natural' claim is 'NOT made using these chemicals: Phosphoric Acid, Hexane, Potassium Hydroxide, Ascorbic Acid.'" <u>Id.</u> at 1530-31. The survey did not describe or otherwise define the listed "chemicals."

The District Court concluded that the second question, like the first, was inappropriately leading and manipulative. <u>See</u> <u>KIND II</u>, 627 F. Supp. 3d at 288-89. Our review of the record reveals nothing manifestly erroneous about that conclusion. Indeed, by asking participants whether they expected an "All

Natural" snack bar to contain certain listed "chemicals," Dr. Dennis led survey participants down the path of selecting the answer preferred by plaintiffs. See id. at 289. Additionally, by listing the "chemicals" without defining them, Dr. Dennis failed to differentiate, for example, between "ascorbic acid," a form of Vitamin C safe for human consumption, and "phosphoric acid," which is "not safe for ingestion." Id. Dr. Dennis admitted that he did not define the listed chemicals because he "thought it would not serve the project well" to do so. Id. Based on these findings, the District Court did not abuse its discretion in concluding that the design of the second question was also a "clear attempt to manipulate consumers into selecting the answer that plaintiffs preferred," and thus had "no probative value and could not assist a trier of fact." Id.

Plaintiffs assert that the District Court should have admitted Dr. Dennis's report because "[c]hallenges to the design and implementation of consumer perception surveys go to the weight of the evidence and do not affect admissibility." Appellant's Br. at 42 (citing Schering Corp., 189 F.3d at 228). But, as we have previously found, if "surveys were so flawed that they lacked relevance, they would [be] inadmissible under Rules 401 and 402 of the Federal Rules of Evidence." McNeilab, Inc. v. Am. Home Prods. Corp., 848 F.2d 34, 38

(2d Cir. 1988). And, as noted, the admissibility of survey evidence is subject to "Rule 403's more general prohibition against evidence that is less probative than prejudicial or confusing." Schering Corp., 189 F.3d at 228; see also Starter Corp. v. Converse, Inc., 170 F.3d 286, 297 (2d Cir. 1999) (holding "that the district court did not abuse its discretion" in excluding a survey from evidence because "the probative value of the survey [was] so slight that it was easily outweighed, under a Rule 403 analysis, by the danger of confusion of the issues").

The District Court did not expressly cite to Rule 401 or Rule 403. But its analysis clearly rests on those rules. The District Court concluded: "As it cannot assist the trier of fact, the survey and Dr. Dennis's testimony regarding the survey are inadmissible." KIND II, 627 F. Supp. 3d at 292. The District Court further found that Dr. Dennis's choices "undercut[] the relevance of [his] results." Id. at 288. These are findings based on Rule 401. And the District Court's finding that Dr. Dennis's report would leave the "factfinder to guess at the answers to key questions in this case," id. at 290, suggests consideration of Rule 403, which allows a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. Indeed, the District Court explicitly relied on Nimely

20

v. City of New York, 414 F.3d 381 (2d Cir. 2005), which addressed the interplay between Rules 702 and 403 of the Federal Rules of Evidence. See KIND II, 627 F. Supp. 3d at 291-92. In Nimely, we acknowledged that "[i]n addition to the requirements of Rule 702, expert testimony is subject to Rule 403, and 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" 414 F.3d at 397 (emphasis added) (quoting Fed. R. Evid. 403). We also "noted the uniquely important role that Rule 403 has to play in a district court's scrutiny of expert testimony." Id. Plaintiffs fail to acknowledge the significance of Rule 401 and Rule 403 to the admissibility of the expert reports.

In sum, the District Court found that Dr. Dennis's survey and testimony were inadmissible because, "even ignoring" the survey's methodological failures, they "provide[d] no useful information about how a reasonable consumer understands 'All Natural.'" KIND II, 627 F. Supp. 3d at 289. This rendered the survey and testimony based upon it not "relevant to the task at hand," Amorgianos, 303 F.3d at 265 (citation and quotation marks omitted), and thus properly excluded from evidence under Federal Rule of Evidence 402. See Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."); see also Starter Corp.,

170 F.3d at 297 (A survey may be precluded where "it is irrelevant to the issues." (citation and quotation marks omitted)). We find no basis in the record to conclude that the District Court abused its discretion.

### C. Dr. Toutov

Plaintiffs designated Dr. Anton Toutov "as an expert chemist for the purpose of determining the veracity of KIND's 'All Natural' labeling statements." Appellants' Br. at 51. The District Court excluded Dr. Toutov's report, finding that it had "no relevance to this case" and "cannot assist the trier of fact." KIND II, 627 F. Supp. 3d at 294-95. On appeal, plaintiffs contend that the District Court abused its discretion in excluding Dr. Toutov's opinion, arguing that the analysis underlying his report was "meaningful and relevant to a reasonable consumer's understanding of" the phrase "All Natural." Appellants' Br. at 51. We again disagree.

Dr. Toutov conducted a review of the ingredient lists on KIND's challenged products and then compared those ingredients to a framework he developed. This framework examined each ingredient's origin, the extent to which the ingredient had been processed from its natural form, and the final form of the ingredient. After conducting an analysis based on this framework,

22

Dr. Toutov opined on whether a specific ingredient could be classified as "natural" under his framework. However, in doing so, Dr. Toutov did not apply or reference Dr. Dennis's definition of "All Natural." He also did not apply any of the definitions alleged in the operative complaint.

Furthermore, Dr. Toutov did not perform any analysis (chemical or otherwise) of the ingredients actually contained in the KIND products. Nor, for the most part, did he consider how KIND actually manufactured those ingredients. Instead, Dr. Toutov generally considered how the challenged ingredients were "typically" sourced and concluded that many of the challenged ingredients are not "natural" as he framed the term. But, without some evidence to the contrary, there is no reason to assume that Dr. Toutov's personal understanding of the term "natural" is relevant to how a reasonable consumer would understand that same term.

Plaintiffs contend that the District Court erred in finding that "Dr. Toutov did not 'focus on' the actual ingredients used in KIND's products" because "[f]or every single one of the ingredients challenged in his report, which apply to all Products at issue in this litigation, Dr. Toutov . . . cited to specific evidence – most often from internal KIND documents – demonstrating that his analysis

applied to the specific ingredients KIND used in the Products during the class period." Reply. Br. at 18. This is an overreaching and incorrect characterization of Dr. Toutov's report which, as correctly found by the District Court, heavily relies on generalities not tied to the challenged ingredients actually contained in the relevant KIND products.

The District Court did not abuse its discretion in finding that Dr. Toutov's report did not assist the trier of fact because his report does not opine on whether those ingredients meet the definition of the term "All Natural" as understood by a reasonable consumer. Dr. Toutov did not evaluate whether the KIND products at issue were "All Natural" as a reasonable consumer would understand that term, or even as the named plaintiffs claimed to understand it, or as it is defined in any dictionary.[7]

As Dr. Toutov testified, he "was not engaged to opine on consumer perception," and consumer perceptions had no "role . . . in the framework that [he] created" to arrive at his conclusions. J. App'x at 1937. Thus, Dr. Toutov's

---

[7] While Dr. Toutov's report explains from a purportedly scientific perspective what it means for a product to be "artificial" or "synthetic," the record does not reflect a reasonable consumer's understanding of these terms. Thus, the report adds no useful information that would help the trier of fact determine the answer to the relevant legal question: whether consumers were actually deceived.

report is neither meaningful nor relevant to <u>a reasonable consumer's</u> <u>understanding</u> of the phrase "All Natural." Accordingly, the District Court did not abuse its discretion in precluding Dr. Toutov's expert report; his report does not "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without" it. <u>Amorgianos</u>, 303 F.3d at 265 (citation and quotation marks omitted).

### III. <u>The District Court did not err in granting summary judgment for KIND.</u>

Without Dr. Dennis's report, the District Court concluded that plaintiffs had "not introduced evidence that could allow a factfinder to determine a reasonable consumer's understanding of 'All Natural,' and therefore, their claims cannot survive defendant's motion for summary judgment." <u>KIND II</u>, 627 F. Supp. 3d at 283; <u>see also</u> <u>id.</u> at 292.

On appeal, plaintiffs contend that even <u>without</u> Dr. Dennis's report, they have presented sufficient evidence for a trier of fact to conclude that KIND's products are not "All Natural" because those products contain artificial and synthetic ingredients.

"We review the district court's rulings on summary judgment <u>de novo</u>, resolving all ambiguities and drawing all permissible inferences in favor of the

25

nonmoving party." Tiffany & Co. v. Costco Wholesale Corp., 971 F.3d 74, 83 (2d Cir. 2020). "Summary judgment is appropriate only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Bey v. City of New York, 999 F.3d 157, 164 (2d Cir. 2021) (citation and quotation marks omitted).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists," but "when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to" an absence of evidence "on an essential element of the nonmovant's claim." Souza v. Exotic Island Enters., Inc., 68 F.4th 99, 108 (2d Cir. 2023) (citation and quotation marks omitted). Once a movant has made that showing, "the non-movant must set forth specific facts showing that there is a genuine issue for trial." Id. (citation and quotation marks omitted). "Conclusory allegations, conjecture, and speculation are insufficient to create a genuine issue of fact." Shannon v. N.Y.C. Transit Auth., 332 F.3d 95, 99 (2d Cir. 2003) (citation and quotation marks omitted).

Plaintiffs present four primary theories as to why the evidence of a reasonable consumer's perception is sufficient to defeat summary judgment,

including the "pled definitions and deposition testimony, along with the scientific literature and existing consumer surveys in the record." Appellants' Br. at 19. But that purported evidence fails to present any cohesive definition of what a reasonable consumer would expect from products labeled "All Natural."[8]

First, the definitions of "All Natural" pled in the ACC fail to create a triable issue of fact because (1) those definitions fail to present a coherent definition of "All Natural" that could be applied by a trier of fact, and (2) the ACC is not verified and its allegations therefore are not evidence for summary judgment purposes. Cf. Brandon v. Kinter, 938 F.3d 21, 26 n.5 (2d Cir. 2019) (The "allegations in the complaint can be considered as evidence for summary judgment purposes" only where the complaint has been "sworn under penalty of perjury."). Although the definitions pled in the ACC may have sufficed at the motion to dismiss or class certification stage of litigation, plaintiffs cannot meet their burden on summary judgment "through reliance on unsupported assertions." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

---

[8] This evidence also does not establish how a reasonable consumer understands the terms "artificial" or "synthetic." Nor does it establish that a reasonable consumer would interpret "All Natural" as meaning "containing no artificial or synthetic ingredients."

Second, plaintiffs' deposition testimony also fails to create a triable issue of fact. Plaintiffs' testimony, even taken collectively, does not establish an objective definition of how a reasonable consumer acting reasonably understands the term "All Natural." To the contrary, it establishes how divergent consumers' expectations can be. For example, one plaintiff testified that she expected "All Natural" to mean not synthetic. Another plaintiff testified that she expected "All Natural" to mean that the product was made from whole grains, nuts, and fruit. Yet another explained her belief that "All Natural" meant that the ingredients were literally plucked from the ground. Notably, several plaintiffs testified that consumers could have different understandings about the implications of the term "All Natural," that these understandings could change over time, and that not everyone would agree with their particular understanding of that term. Plaintiffs fail to explain how a trier of fact could apply these shifting definitions to reach a conclusion as to whether the use of the term "All Natural" on KIND product labels was deceptive.

Third, plaintiffs submit that KIND's internal documents "evidence its understanding of what 'All Natural' means to a reasonable consumer." Appellant's Br. at 31. But the documents on which plaintiffs rely show only that

28

KIND had its own conception of the term "All Natural." The documents do not reveal a <u>reasonable consumer's</u> understanding of that term. Nor do plaintiffs offer any theory on which these materials would be admissible in evidence.[9]

Fourth, plaintiffs contend that "an ordinary dictionary definition of the word 'natural'" would suffice to meet their burden of establishing what a reasonable consumer acting reasonably expects from a product labeled "All Natural." Appellants' Br. at 2-3. Plaintiffs argue that we should rely on the dictionary definition of "natural" used at class certification: "existing in or caused by nature; not made or caused by humankind." <u>Id.</u> (citation and quotation marks omitted); <u>see also</u> <u>id.</u> at 27-28.  But this definition is not useful when applied to a mass-produced snack bar wrapped in plastic. Such a bar is clearly made by humans. It gets plaintiffs no closer to demonstrating what a reasonable consumer would expect of a KIND product bearing the "All Natural" label.

Finally, plaintiffs contend that "[a] precise definition of 'All Natural' is not

---

[9] The FDA materials relied upon by plaintiffs are similarly unhelpful. Plaintiffs cite to a 2015 FDA solicitation of comments regarding the term "natural" in food labeling. This cites a citizen petition, which in turn cites a Consumer Reports National Research Center survey on perceptions of "natural." The survey and citizen petition further confirm that consumers have varied understandings of what "natural" means.

29

required for the claim to be false and misleading.'" Appellants' Br. at 24. But plaintiffs' arguments on this point confuse the standards applicable to summary judgment with those applicable at earlier stages of litigation. For example, plaintiffs rely heavily on Mantikas v. Kellogg Co., 910 F.3d 633 (2d Cir. 2018), which addressed whether the plaintiffs had alleged a plausible claim of consumer deception sufficient to defeat a motion to dismiss. Id. at 636-39. Mantikas did not address the evidence required to defeat a motion for summary judgment.

Similarly, plaintiffs rely on the District Court's findings at the motion to dismiss and class certification stages, where the allegations of the pleadings are accepted as true and the primary question is whether plaintiffs have stated a cognizable claim. But at summary judgment, where KIND has pointed to a lack of evidence on an essential element of plaintiffs' claims, it is plaintiffs' burden to present admissible evidence that a reasonable consumer acting reasonably would be deceived by the "All Natural" claim on KIND products. See Souza, 68 F.4th at 108. Without evidence of a reasonable consumer's understanding of "All Natural," plaintiffs cannot succeed on their claims at summary judgment. Indeed, a jury could hardly render a unanimous verdict when multiple, shifting,

definitions of the key term have been offered by the party with the burden of proof.

In sum, while the "evidence" to which plaintiffs point may have sufficed to overcome a motion to dismiss, or to support a motion for class certification, it fails to raise a triable issue of fact at summary judgment. Because plaintiffs failed to produce admissible evidence demonstrating what a reasonable consumer, acting reasonably, would expect of KIND products bearing the "All Natural" label, we hold that the District Court did not err in granting summary judgment in favor of KIND.

## IV.    <u>The issue of class decertification is moot.</u>

Last, plaintiffs assert that the District Court abused its discretion in decertifying the classes. Because we affirm the District Court's grant of summary judgment, the issue of decertification is "no longer live" and plaintiffs "lack a legally cognizable interest in the outcome" of KIND's motion to decertify the classes. <u>Already, LLC v. Nike, Inc.</u>, 568 U.S. 85, 91 (2013) (citation and quotation marks omitted). Accordingly, because the issue of class decertification is now moot, we need not reach it.

31

## CONCLUSION

For the reasons stated above, we find that the District Court did not abuse its discretion in precluding the expert reports of Dr. Dennis and Dr. Toutov. We further hold that the District Court did not err in granting KIND's motion for summary judgment because plaintiffs failed to produce admissible evidence demonstrating what a reasonable consumer, acting reasonably, would expect of KIND products labeled "All Natural." Because we affirm the District Court's grant of summary judgment, plaintiffs' arguments regarding class decertification are moot.

Accordingly, we **AFFIRM** the judgment of the District Court.